## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) TILL METRO ENTERTAINMENT, | ) | |
| D/B/A/ The Vanguard | ) | |
| Individually and on behalf of all others | ) | Case No.: 4:20-cv-00255-GKF-JFJ |
| similarly situated | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| (1) Covington Specialty Insurance Company, | ) | |
| A New Hampshire Stock Company | ) | [PRPOSED] CLASS ACTION |
| | ) | |
| Defendant. | ) | ATTORNEY LIEN CLAIMED |

## COMPLAINT

Plaintiff Till Metro Entertainment LTD (d/b/a/ THE VANGUARD)(hereinafter "Plaintiff "or "Till Metro"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Covington Specialty Insurance Company, A New Hampshire Stock Company ("Covington"), and in support thereof states the following:

## I.     NATURE OF THE ACTION

1.     Plaintiff Till Metro owns and operates The Vanguard, a concert venue, located in Tulsa, Oklahoma. The Vanguard continued existence is now threatened by COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2").

2.     To protect its businesses in the event that it suddenly had to suspend operations for reasons outside of its control, or if it had to act in order to prevent further property damage, Plaintiff purchased insurance coverage from Covington, including special property coverage, as set forth

in Covington's Business Income (and Extra Expense) Coverage Form (Form CP 00 30 10 02) ("Business Income (and Extra Expense) Coverage Form ").

3.     Covington's Business Income (and Extra Expense) Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss or damage to covered property.

4.     Covington's Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

5.     Covington's Business Income (and Extra Expense) Coverage Form also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

6.     Covington's Business Income (and Extra Expense) Coverage Form, under a section entitled "Duties in the Event of Loss" mandates that Covington's insured "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This is commonly referred to as "Sue and Labor" coverage.

7.     Unlike many policies that provide Business Income coverage (also referred to as "business interruption" coverage), Covington's Business Income (and Extra Expense) Coverage Form does not include, and is not subject to, any exclusion for losses caused by the spread of viruses or communicable diseases.

8.     Plaintiff was forced to suspend or reduce business at The Vanguard due to COVID-19 and the resultant closure orders issued by civil authorities in Oklahoma.

9.     Upon information and belief, Covington has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. Indeed, Covington has denied Plaintiff's claim under its Covington policy.

## II.     JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because Defendant and at least one member of the Class are citizens of different states and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

11.     Venue is proper in this District under 28 U.S.C. § 1391, because a substantial portion of the acts and conduct giving rise to the claims occurred within this District.

## III.     THE PARTIES

12.     Plaintiff Till Metro is a Oklahoma corporation, with its principal place of business in Tulsa, Oklahoma. Till Metro owns and operates The Vanguard concert venue in Tulsa.

13.     Defendant Covington is an insurance company organized under the laws of the State of New Hampshire, with its principal place of business, based on information and belief, in Atlanta, Georgia. It is authorized to write, sell, and issue insurance policies providing property and business income coverage in Oklahoma, as well as other states.   At all times material hereto, Covington conducted and transacted business through the selling and issuing of insurance policies within Oklahoma, including, but not limited to, selling and issuing property coverage to Plaintiff.

## IV.     FACTUAL BACKGROUND

**A.     *The Business Income (and Extra Expense) Coverage Form***

14.     In return for the payment of a premium, Covington issued Policy No. VBA698565 00 to Plaintiff for a policy period of May 25, 2019 to May 25, 2020. Policy No. VBA698565 includes a Business Income (and Extra Expense) Coverage Form (CP 00 30 10 12). The Covered Premises under Policy No.  PC-6606802 is the The Vanguard at 222 NORTH MAIN STREET, TULSA, OK 74103. Policy No. VBA698565 00 is attached hereto as Exhibit A.

15.     Plaintiff has performed all its obligations under Policy No.  PC-6606802, including the payment of premiums.

16.     In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.). Most property policies sold in the United States, however, including those sold by Covington, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. In the Business Income (and Extra Expense) Coverage Form  provided to Plaintiff, under the heading "Covered Causes of Loss," Covington agreed to "pay for direct physical loss" to Covered Property "unless the loss is excluded or limited by" the policy.

17.     In the policy, Covington did not exclude or limit coverage for losses from the spread of viruses. The Policy only contains an "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials," which are not defined in the Policy. This exclusion only applies to an escape of contaminants from a place of containment, such as a storage tank or cell, not the natural spread of a virus.

18.     Losses due to COVID-19 are a Covered Cause of Loss under Covington policies with the Business Income (and Extra Expense) Coverage Form.

19.     In the Business Income (and Extra Expense) Coverage Form , Covington agreed to pay for its insureds' "actual loss of Business Income [] sustained due to the necessary 'suspension' of [] operations during the 'period of restoration'" where the suspension is "caused by direct physical loss of or damage to" property at the covered premises.  A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Covington agreed to pay for loss of Business Income during the "period of restoration" that begins within 72 hours after the time of direct physical loss or damage.

20.     "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned "if no physical loss or damage had occurred" as well as continuing normal operating expenses incurred.

21.     The presence of virus or disease can constitute physical damage to property, as  the insurance industry has recognized since  at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building        surfaces),        and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

22.     In the Business Income (and Extra Expense) Coverage Form , Covington also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to

the Covered Property.

23.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

24.     Covington also agreed to "pay for the actual loss of Business Income" that Plaintiff sustains "and any Extra Expense caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area,, and the civil authority action is taken "in response to dangerous physical conditions."

25.     Covington's Business Income (and Extra Expense) Coverage Form , under a section entitled "Duties in the Event of Loss" mandates that Covington's insured "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This is commonly referred to as "Sue and Labor" coverage.

26.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Covington policy.

**B.     *The Covered Cause of Loss***

27.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

**1.     The Tulsa and Oklahoma Closure Orders**

28.     In response to the rapid spread of COVID-19 throughout Oklahoma and the United States, the City of Tulsa and the State of Oklahoma issued emergency orders requiring the closure of non-essential business, like The Vanguard.

29.     The City of Tulsa issued Civil Emergency Authority Order Executive Order 2020-2 on March 17, 2020, requiring the closure of indoor performance venues in the City of Tulsa, in addition to bars, restaurants, theaters, and most other commercial establishments and places of public accommodation . This order remained in full effect through May 1, 2020.

30.     On April 24, 2020, the Governor of the State of Oklahoma issued the Fourth Amended Executive Order 2020-13 to implement the Open Up and Recover Safely (OURS) Plan, a three-phased approach to open Oklahoma's economy back up starting April 24, 2020.

31.     Gatherings of more than fifty (50) people, which is the business of Till Metro, remained banned in the City of Tulsa through May 31, 2020 under Executive Order 2020-08.

32.     As of June 1, 2020, venues such as The Vanguard could reopen in the City of Tulsa, so long as they operated in compliance with the State of Oklahoma's OURS Plan.

33.     Phase 3 of the OURS Plan, which remains in effect in the State of Oklahoma, requires the Vanguard to encourage customers and employees to follow Centers for Disease Control Social Distancing Guidelines of maintaining six feet of physical distance. Such distancing does not allow The Vanguard to operate at full capacity.

34.     Violations of the City of Tulsa and State of Oklahoma Orders are punishable by fine, imprisonment, or both.

### 2.     The Impact of COVID-19 and the Closure Orders

35.     The presence of COVID-19 caused direct physical loss of or damage to the covered property under the Plaintiff's policies, and the policies of the other Class members, by denying use

of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

36.     The Closure Orders, including the issuance of Oklahoma and City of Tulsa Closure Orders, prohibited access to Plaintiff and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

37.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense.

38.     Till Metro submitted a claim for loss to Covington under its policy due to the presence of COVID-19 and the Closure Orders, and Covington denied that claim.

## V.     CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

36.     Plaintiff seeks to represent nationwide classes defined as:

**Business Income Breach Class:** All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Covington; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Covington property insurance policy; (c) made a timely claim under their property insurance policy issued by Covington; and (d) were denied Business Income coverage by Covington for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

**Civil Authority Breach Class:** All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Covington; (b) suffered loss of Business

Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Covington; and (d) were denied Civil Authority coverage by Covington for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

**Extra Expense Breach Class:** All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Covington; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Covington property insurance policy; (c) made a claim under their property insurance policy issued by Covington; and (d) were denied Extra Expense coverage by Covington despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

**Sue and Labor Breach Class:** All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Covington; (b) sought to prevent property damage caused by COVID-19    by    suspending    or    reducing    business operations, at the premises covered by their Covington property insurance policy; (c) made a claim under their property insurance policy issued by Covington; and (d) were denied Sue and Labor coverage by Covington in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

**Business Income Declaratory Judgment Class:** All persons and entities with Business Income coverage under a property insurance policy issued by Covington that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

**Civil   Authority Declaratory Judgment Class:** All persons and entities with Civil Authority coverage under a property insurance policy issued by Covington that suffered loss of

Business Income and/or Extra Expense caused     by     a     Closure     Order    (the "Civil  Authority Declaratory Judgment Class").

**Extra Expense Declaratory Judgment Class:** All persons and entities with Extra Expense coverage under a property insurance policy issued by Covington that  sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Covington property insurance policy (the "Extra Expense Declaratory Judgment Class").

**Sue and Labor Declaratory Judgment Class:** All persons and entities with a Sue and Labor provision under a property insurance policy issued by Covington that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Covington property insurance policy (the "Sue and Labor Declaratory Judgment Class").

39.     Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

40.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

41.     **Numerosity—Federal   Rule   of   Civil Procedure   23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized,

Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

42.     **Commonality and     Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a. Covington issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

b. whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c. whether Covington wrongfully denied all claims based on COVID-19;

d. whether Covington's Business Income coverage applies to a suspension of business caused by COVID-19;

e. whether Covington's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f. whether Covington's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.  whether Covington's Sue and Labor provision applies to require Covington to pay for efforts to reduce damage caused by COVID-19;

h. whether Covington has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i.     whether Plaintiff and the Class are entitled to an award of reasonable ttorney fees,

interest and costs.

43.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).**   Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

44.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation and insurance bad-faith litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

45.     **Inconsistent or      Varying      Adjudications      and      the      Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

46.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**

Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making final injunctive relief and declaratory relief appropriate, as described below, with respect to the Class members.

47.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Business Income Breach Class)

48.     Plaintiff Till Metro ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-47 as if fully set forth herein.

49.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

50.     Plaintiff's Covington policy, as well as those of the other Business Income Breach Class members, are contracts under which Covington was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Breach Class members' losses for claims covered by the policy.

51.     In the Business Income (and Extra Expense) Coverage Form, Covington agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of

its operations during the "period of restoration."

52.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Covington agreed to pay for loss of Business Income during the "period of restoration" that begins within 72 hours after the time of direct physical loss or damage.

53.     "Business Income" means net income (or loss) before tax that Plaintiff and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred" as well as continuing normal operating expenses incurred.

54.     COVID-19 caused direct physical loss and damage to Plaintiff and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff and the other Business Income Breach Class members' Covington policies.

55.     Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Covington or Covington is estopped from asserting them, and yet Covington has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

56.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Covington has breached its coverage obligations under the policies.

57.     As a result of Covington's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Covington is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

58.     Plaintiff Till Metro ("Plaintiff" for the purpose of this claim) repeats and realleges

Paragraphs 1-57 as if fully set forth herein.

59.     Plaintiff brings this Count individually and on behalf of the other members of the

Civil Authority Breach Class. Plaintiff's Covington insurance policy, as well as those of the other

Civil Authority Breach Class members, are contracts under which Covington was paid premiums

in exchange for its promise to pay Plaintiff and the other Civil Authority Breach Class members'

losses for claims covered by the policy.

60.     Covington agreed to "pay for the actual loss of Business Income" that Plaintiff

sustains "and any Extra Expense caused by action of civil authority that prohibits access to" the

Covered Property when a Covered Cause of Loss causes damage to property near the Covered

Property, the civil authority prohibits access to property immediately surrounding the damaged

property, the Covered Property is within the prohibited area, and the civil authority action is taken

"in response to dangerous physical conditions."

61.     The Closure Orders triggered the Civil Authority provision under Plaintiff and the

other members of the Civil Authority Breach Class's Covington insurance policies.

62.     Plaintiff and the other members of the Civil Authority Breach Class have complied

with all applicable provisions of the policies, and/or those provisions have been waived by

Covington, or Covington is estopped from asserting them, and yet Covington has abrogated its

insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

63.     By denying coverage for any business losses incurred by Plaintiff and other

members of the Civil Authority Breach Class in connection with the Closure Orders and the

COVID-19 pandemic, Covington has breached its coverage obligations under the policies.

64.     As a result of Covington's breaches of the policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Covington is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

65.     Plaintiff Till Metro ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-64 as if fully set forth herein.

66.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

67.     Plaintiff's Covington insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Covington insurance was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Breach Class members' losses for claims covered by the policy.

68.     In the Business Income (and Extra Expense) Coverage Form, Covington also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

69.     "Extra Expense" includes expenses to avoid or  minimize  the  suspension  of business, continue operations, and to repair or replace property.

70.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property.

71.     Plaintiff and the other members of the Extra Expense Breach Class have complied

with all applicable provisions of the policies and/or those provisions have been waived by Covington or Covington is estopped from asserting them, and yet Covington has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

72.      By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Covington has breached its coverage obligations under the policies.

73.      As a result of Covington's breaches of the policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Covington is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

74.      Plaintiff Covington ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-73 as if fully set forth herein.

75.      Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

76.      Plaintiff's Covington policy, as well as those of the other Sue and Labor Breach Class members, are contracts under which Covington was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

77.      In the Business Income (and Extra Expense) Coverage Form, Covington agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

78.      In complying with the Closure Orders and otherwise suspending or limiting

operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

79.     Plaintiff and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Covington, or Covington is estopped from asserting them, and yet Covington has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

80.     By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Covington has breached its coverage obligations under the policies.

81.     As a result of Covington's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Covington is liable, in an amount to be established at trial.

**COUNT V**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

82.     Plaintiff Till Metro ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-81 as if fully set forth herein.

83.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

84.     Plaintiff's Covington policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Covington was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

85.     Plaintiff and the other Business Income Declaratory Judgment Class members have

complied with all applicable provisions of the policies and/or those provisions have been waived by Covington, or Covington is estopped from asserting them, and yet Covington has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class members are entitled.

86.     Covington has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

87.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class members' rights and Covington's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

88.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.  Plaintiff and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.  Covington is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of

their    businesses    stemming    from   the COVID-19 pandemic.

**COUNT VI**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

89.     Plaintiff Till Metro ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-88 as if fully set forth herein.

90.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

91.     Plaintiff's Covington insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Covington was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

92.     Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those yet Covington has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

93.     Covington has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

94.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class members' rights and Covington's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil

Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

95.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

     i.     Plaintiff and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.     Covington is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of        their businesses        stemming        from the        COVID-19 pandemic.

## COUNT VII
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

96.     Plaintiff Till Metro ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-95 as if fully set forth herein.

97.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

98.     Plaintiff's Covington insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Covington was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment

Class members' losses for claims covered by the policy.

99.     Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Covington, or Covington is estopped from asserting them, and yet Covington has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

100.    Covington has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

101.    An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class members' rights and Covington's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

102.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

     i.   Plaintiff and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies;

    and

    ii.  Covington is obligated to pay Plaintiff and the other Extra Expense

Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT VIII
## DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE
### (Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)

103.    Plaintiff Till Metro ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-102 as if fully set forth herein.

104.    Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

105.    Plaintiff's Covington insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Covington was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

106.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Covington, or Covington is estopped from asserting them, and yet Covington has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

107.    Covington has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

108.    An actual case or controversy exists regarding Plaintiff and the other Sue and Labor Declaratory Judgment Class members' rights and Covington's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

109.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i. Plaintiff and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies;

and

ii. Covington is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.    REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a.    Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.    Entering judgment on Counts I-IV in favor of Plaintiff Till Metro and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Extra

Expense Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.   Entering declaratory judgments on Counts V-VIII in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows;

    i.   Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.   Covington is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

d.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded.

e.   Ordering Defendant to pay attorneys' fees and costs of suit; and

f.   Ordering such other and further relief as may be just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

/s/ Mark A. Smith
Mark A. Smith, OBA #31231
Caruso Law Firm, P.C.
1325 East 15th Street, Suite 201
Tulsa, Oklahoma 74120
(918) 583-5900 phone
(918) 583-5902 fax
msmith@carusolawfirm.com

Daniel E. Smolen, OBA #19943
**SMOLEN, SMOLEN & ROYTMAN, PLLC**
701 S. Cincinnati Ave.
Tulsa, OK 74119
Phone (918) 585-2667
Fax (918) 585-2669
danielsmolen@ssrok.com

***Attorneys for Plaintiff***